IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TRAVELERS CASUALTY AND SURETY )
COMPANY OF AMERICA, a Corporation, )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )    CIVIL ACTION  08-0518-KD-C
                                   )
CRYSTAL TOWERS, LLC, an Alabama    )
Limited Liability Company; CRYSTAL )
SHORES WEST, LLC, an Alabama       )
Limited Liability Company; COASTAL )
BUILDERS, INC., a Corporation; and )
JOHN CASE, an individual;          )
                                   )
        Defendants,                )

CRYSTAL TOWERS, LLC, an Alabama    )
Limited Liability Company and CRYSTAL )
SHORES WEST, LLC, an Alabama       )
Limited Liability Company,         )
                                   )
        Counter-Claimants,         )
                                   )
v.                                 )
                                   )
TRAVELERS CASUALTY AND SURETY )
COMPANY OF AMERICA, a Corporation, )
                                   )
        Counter-Defendant.         )

## ORDER

This action is before the Court on the motion for summary judgment on the counterclaim

filed by counter-defendant Travelers Casualty and Surety Company of America (Travelers) and

supporting documents, the response filed by counterclaim plaintiffs Crystal Tower, LLC and

Crystal Shores West, LLC, (the Crystals) and supporting documents, and Travelers reply (docs.

33-36, 45-46, 51-52).  Upon consideration, and for the reasons set forth herein, the motion for

summary judgment is **DENIED** as to Counts Three and Eleven alleging fraudulent suppression; and **GRANTED** as to Counts One and Nine alleging promissory fraud, Counts Two and Ten alleging misrepresentation, Counts Four and Twelve alleging breach of fiduciary duty, Counts Five and Thirteen alleging civil conspiracy, Count Six alleging breach of contract, Count Seven alleging bad faith, and Counts Eight and Fourteen alleging negligence.

The Crystals motion for leave to amend the counterclaim (doc 56) is **DENIED.**[1]


I. Background

The Crystals contracted with Coastal Builders (CBI), whose President is John Case, for the construction of two condominiums at or near Gulf Shores, Alabama.  A contract for construction was executed as to Crystal Tower in March 2005 and a contract for construction was executed as to Crystal Shores West in September 2004.  CBI obtained performance and payment bonds for both projects from Travelers, naming the Crystals as owner/obligees on the bonds.

As of the filing of the complaint, Travelers alleged a loss of $1,996,433.69 on the two projects as a result of assisting CBI with completion costs and paying claims of subcontractors and labor and material suppliers.  Travelers and the Crystals dispute whether CBI is owed additional compensation, whether CBI was overpaid by the Crystals, and whether CBI completed the contract.  Travelers seeks a declaratory judgment as to its duties and obligation

---

[1] Travelers filed a motion to strike portions of the affidavit of Collier Merrill (doc. 50). Because the Court has not relied on the portions of that affidavit which Travelers moved to strike, the motion to strike is **DENIED** as **MOOT**.

2

under the performance and payment bonds (doc. 1, Count I).[2]

CBI also obtained through Travelers payment and performance bonds for other projects including the Lighthouse, San Carlos and Beau View Tower condominiums.  CBI was the general contractor on all projects.

In the complaint, Travelers alleges that it has lost $12,618,267.83 and seeks exoneration, indemnification, and specific performance as to the bonds on all the condominiums (Count II). Travelers also seeks injunctive relief against CBI and Case (Count III) and indemnification against CBI and Case under the General Agreement of Indemnification (GAI) for all losses on all condominiums less any amount which the Crystals may owe to CBI and Case (Count IV).

In their counterclaim against Travelers, (doc. 12), the Crystals allege promissory fraud, misrepresentation, fraudulent suppression, breach of fiduciary duty, civil conspiracy, bad faith, and negligence as to Crystal Tower and allege promissory fraud, misrepresentation, fraudulent suppression, breach of fiduciary duty, civil conspiracy, and negligence as to Crystal Shores West.  The tort claims are based upon Travelers alleged acts or omissions surrounding the payment and performance bonds.  The claim for breach of contract arises from the performance bond issued on the Crystal Tower project. [3]

---

[2] A state court action between the Crystals and CBI and John Case was filed in Baldwin County, Alabama. CBI and Case sued the Crystals alleging that they owed $1.1 million for work on the condominiums.  The Crystals counterclaimed.  Because CBI and Case did not participate in discovery, their suit was dismissed and default judgment was entered on the Crystals' counterclaim.

[3] In the brief in support of the motion for summary judgment, Travelers argues that the Crystals have no standing to assert a claim related to any delay in making a payment under the payment bonds (doc. 34). The Crystals respond that they are not making claims pursuant to the payment bonds, but instead their claims are tort claims based upon the wrongful actions and inactions of Travelers (doc. 45).

II. <u>Factual background</u>[4]

In early February 2006, Travelers' representatives met with Case and CBI's representatives.  At this meeting, Travelers was informed of the declining financial status of CBI and Case, their possible insolvency, the declining financial status of the other Case projects for which CBI was the contractor, the general economic decline of Case's business partners, and that Case had taken funds from CBI to pay personal debts (doc. 46, Exhibit N, Internal Memo).

The GAI agreement between Travelers and CBI provided for a joint "Special Account" to receive and disburse monies for payment to subcontractors and vendors at Travelers' discretion.  As a result of the February meeting and Travelers' resultant investigation of the financial status of CBI ( a book and records review), a special account was opened around April 6, 2006.  Subsequently, the Crystals received an "Irrevocable Letter of Direction" informing the Crystals to make all future payments jointly between Travelers and CBI (doc. 34, ¶ 3, doc. 45, ¶ 10).  CBI continued to work on the projects and to make monthly pay applications to the Crystals and other owners.  Payments from the Crystals and other project owners were then deposited into the joint Travelers - CBI account.  In regard to payments to the subcontractors and material suppliers, CBI received and reviewed these claims, submitted them to Travelers, and payment was made from the joint account on joint signature of Travelers and CBI.

Around May 17, 2006, the Crystals' manager J. Collier Merrill spoke with Kimberly

---

[4] When resolving a motion for summary judgment, the Court construes the evidence and the factual allegations in a light most favorable to the plaintiff. <u>Miller v. King</u>, 384 F.3d 1248, 1258-59 (11th Cir. 2004) citing <u>Burton v. City of Belle Glade</u>, 178 F. 3d 1175, 1187 (11th Cir. 1999) (When ruling on a motion for summary judgment, the court "must view all evidence and all factual inferences therefrom in the light most favorable to the non-moving party.")

Czap, Traveler's managing director for these projects, about the letter of direction and CBI's financial ability to pay subcontractors and timely complete Crystal Tower.  Merrill states that Czap assured him that Travelers would properly administer the payments to subcontractors and that CBI had the financial strength to finish the Crystals' projects.  (doc. 46-1).

Czap testified that she had a telephone conference with Merrill and the Crystals' counsel Lawrence Shill in May 2006 (doc. 46-8, p. 20, 17).  When asked whether Merrill or Shill asked her "what was going on with" CBI and its financial condition and ability to complete the Tower project and pay subcontractors, Czap testified that she did not recall that conversation with any specificity. (doc. 46-8, p.17).

Merrill and Czap had another conversation around July 26, 2006, again regarding CBI's ability to complete Crystal Tower, the letter of direction, and the use of the joint special account to pay subcontractors and material suppliers on the Crystal's project.  Merrill states that he questioned Czap "directly about the financial condition of CBI, and asked whether CBI could complete Tower and West while timely paying the subcontractors." (Doc. 46-1).  Czap told him that the Crystals "need not worry because it was Travelers' 'job' to keep the projects 'lien free'" and that Travelers was "working with CBI and its subcontractors on payment bond claims to resolve payment issues before liens were filed." (doc. 46-1).

Although not specifically directed to the July conversation, Czap testified as follows:

Crystals       . . . Did Travelers ever intend to keep this project lien free as of May 2006?
. . .
Czap          That is not a specific intention of ours going into it.  Our obligations and intent
              are to handle performance issues as they arise in response to a performance claim,
              and to handle payment bond claims as they're filed.

Crystals       Well, I understand, you know - - there's a difference in my question.  You
              answered that by saying, It wasn't our intent going in.  And I'm asking you to

5

|  | focus in on the period of May 2006 through the summer, let's say August 2006. |
|---|---|
|  | That's when my clients contends you made the statement that it's Travelers' job to keep the projects lien free. All right?  And my question is, during that period of time, did Travelers ever intend to keep the projects lien free? |
| . . . |  |
| Czap | Liens were not an issue.  Liens were never mentioned.  Liens were not even on our radar.  Its not our responsibility to deal with liens. |
| Crystals | And that's what I'm driving at.  If it's your position that it's not Travelers' obligation, then isn't it logical that Travelers never intended to keep the project lien free in and around May 2006 through March/April 2007 ? |
| . . . |  |
| Czap | Travelers' intent in March of '06 through the summer, through your time frame - - - I'm going to divide up your time frame - - was to get an understanding of what was going on on the projects, to get an understanding of how the money was being spent by Coastal.  Liens were never a subject matter that was brought up to us on Tower until November of '06. |
|  | Beginning in November of '06 through March of '07, the issue of liens came up quite frequently.  At that point our intent and our obligations were to handle the payment bond claims, understanding the position of Tower. |
|  | In its desire to keep the project free from liens, we focused our efforts on handling the claims . . . |

(doc. 46-8, p. 12-13).

In August 2006, liens were filed by subcontractors against Crystal Shores West and

Crystal Tower (doc. 45, p. 6).[5]  On August 6, 2006, Merrill and Czap had another conference

about the status of the projects, the administration of the payments from the special account,

CBI's financial ability to finish the projects, and Czap's representation that the projects would

remain lien free (doc. 46-1; doc. 46-8, p. 14).  Czap assured Merrill that "Travelers was working

---

[5]  However, Czap testified that "liens were never a subject matter that was brought up to us on Tower until November of '06." (doc. 46-1).

diligently to get the liens removed" (Doc. 46-1).

Also in August 2006, after negotiations among Travelers, the Crystals, and CBI, a letter agreement was executed wherein the parties acknowledged that the final revised contract price for the Crystal Tower project and payable to CBI was in the amount of $33,287,127.00 and that the balance due was $2,579,223.00.   On November 7, 2006, after another dispute as to the balance due to CBI from the Crystals, CBI filed a lien on the Crystal Tower project in the amount of $1,088,777.

On November 22, 2006, Crystal Tower LLC notified Travelers that it was considering declaring a Contractor's Default (doc. 46-1, p. 33).  Thereafter, on December 1, 2006, CBI notified Travelers that it was no longer financially able to complete the projects (doc. 46, Exhibit K).   On January 18, 2007, CBI signed an acknowledgment of default and delivered same to Travelers (doc. 46, Exhibit L).  Travelers then engaged a consulting firm, PC2, to assist with completion of the projects including punch list items.

Also on November 22, 2006, Crystal Tower LLC made demand under the payment bond as to Crystal Tower (doc. 46-1, p. 30).  By March 2007 all payment bond claims, including those which were the subject of liens, were resolved.   Travelers paid a total of $1,996,532.69 on the Crystal Tower payment bond.


III. <u>Summary judgment standard</u>

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c).[6]  A factual dispute is "'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986); see also Information Systems and Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224 (11th Cir. 2002).  A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." Id.; accord Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1993), cert. denied, 507 U.S. 911, 113 S.Ct. 1259 (1993).  Moreover, "what is considered to be 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." Cottrell v. Caldwell, 85 F.3d 1480, 1486 (11th Cir. 1996).

The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The party seeking summary judgment always bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).

---

[6]   Rule 56(c) of the Federal Rules of Civil Procedure, provides that summary judgment shall be granted:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

Once the moving party has satisfied its responsibility, the burden then shifts to the nonmovant to show the existence of a genuine issue of material fact. Id.  The non-movant bears "the burden of coming forward with sufficient evidence on each element that must be proved." Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990).  If "a party...fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," Rule 56(c) mandates that summary judgment be entered against that party.  Celotex, 477 U.S. at 322, 106 S.Ct. at 2552.  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999 (11th Cir. 1992) cert. denied, 507 U.S. 911, 113 S.Ct. 1259 (1993) (internal citations and quotations omitted).  However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Secretary of Dept. of Children and Family Services, 358 F.3d 804, 809 (11th Cir. 2004), cert. denied, 543 U.S.1081,125 S.Ct. 869 (2005).

IV. Analysis

Travelers initially argues that it owes no obligations to the Crystals outside of the performance bond and thus the tort claims are due to be dismissed.  In response, the Crystals acknowledge that Travelers did not have a duty to disclose CBI's financial problems to the Crystals based on the surety relationship.  Instead, the Crystals argue that Travelers' duty to disclose arose when the Crystals inquired about CBI's financial strength.  Because Travelers

responded, the Crystals argue that a duty arose not to suppress or misrepresent information.   The Court agrees.

1) <u>Counts One and Nine - Promissory fraud</u>

In the counterclaim, the Crystals allege that in March and April 2006, Travelers became aware of CBI's financial status, its diversion of Crystals' payments to other projects, and excessive invoicing.  The Crystals further allege that Czap promised the Crystals that it was Travelers' job to keep the projects "lien free".  The Crystals argue that Travelers never intended to keep the projects lien free; instead, Travelers allowed numerous liens to be filed and then "under the guise of red tape" let those liens remain while Travelers worked to remove liens from the other projects.

Travelers argues that no promise was made by Travelers that it did not intend to keep and that Czap's statement concerning keeping the project lien free, if made, was simply a reiteration of the contractual obligation under the payment bond to pay properly filed claims.  Travelers also argues that no reasonable reliance on Czap's statement occurred because no reasonable person would have believed that Travelers could actually prevent a subcontractor or material supplier from filing a lien.

In <u>Carroll v. LJC Defense Contracting, Inc.</u>, - - - So. 3d - - - , 2009 WL 1353266 (Ala. Civ. App. 2009), the Court of Civil Appeals  court set forth the following:

> 'The elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation. To prevail on a promissory fraud claim such as that at issue here, that is, one based upon a promise to act or not to act in the future, two additional elements must be satisfied: (5) proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive.

<u>Carroll</u>, at *9 (quoting <u>Mantiply v. Mantiply</u>, 951 So.2d 638, 653 (Ala. 2006)) (citations omitted) (internal quotations omitted).  In <u>Bethel v. Thorn</u>, 757 So.2d 1154, 1159 (Ala. 1999), the Supreme Court of Alabama further explained that:

> In order for fraud to be predicated upon a promise, it is essential that the promisor intended not to perform at the time of making the promise." <u>Robinson v. Allstate Ins. Co.</u>, 399 So.2d at 290; <u>see also</u> <u>Washington</u>, 719 So.2d at 776 ("[T]o support a claim of promissory fraud, the plaintiff must show that at the time of the alleged misrepresentation (that is, the promise), the defendant intended not to do the act or acts promised, but intended to deceive the plaintiff."); <u>Russellville Prod. Credit Ass'n. v. Frost</u>, 484 So.2d 1084, 1086 (Ala.1986) ("The failure to perform a promised act is not in itself evidence of intent to deceive at the time a promise is made. If it were, the mere breach of a contract would be tantamount to fraud.") (citing <u>P & S Business, Inc. v. South Central Bell Telephone Co.</u>, 466 So.2d 928 (Ala.1985)).

<u>Id</u>. at 1160-1161.  However, a promissory fraud may occur after the contract is formed:

> After becoming bound to the terms of a contract, subsequent events can, but as a general rule do not, give rise to a remedy in tort. . . .  Thus, a party experiencing a failure to perform a contract in the typical situation cannot characterize the other party's promise to perform as a misrepresentation and thereby convert the action to one based upon the tort of fraud.  However, if a promise to perform in the future is made with no intention to perform at the time the promise was made, it is promissory fraud and will give rise to an action in tort for which compensatory and punitive damages may be recovered.  Such a claim is difficult to prove, because mere failure to perform is not evidence of a lack of intent to perform at the time the contract was formed.

<u>Exxon Mobil Corp. v. Alabama Dept. of Conservation and Natural Resources</u>, 986 So.2d 1093, 1130 (Ala. 2007)(internal citations omitted).

As explained *supra*, the law of Alabama "places a heavier burden in those fraud actions where one attempts to prove fraud based on a misrepresentation relating to an event to occur in the future. In those 'promissory fraud' actions, the plaintiff must prove that, at the time the representation was made, the defendant had an intention not to perform the act promised and had an intention to deceive the plaintiff."  <u>National Sec. Ins. Co. v. Donaldson</u>, 664 So.2d 871, 876

(Ala. 1995) (citations omitted).

First, Czap's alleged promise is too vague to form the basis for a promissory fraud. Czap simply stated that it was Travelers' job to keep the projects lien free.   No reasonable person could construe this as more that a vague and imprecise reiteration of Travelers' obligations under the performance and payment bonds.  Moreover, even if the statement could be construed to be a specific promise, there is insufficient evidence from which a reasonable jury could find that  Travelers' did not intend, at the time it made the statement, to work to keep the projects lien free.   Specifically, the two elements which separate promissory fraud from fraud are not present: sufficient evidence of an intent at the time the promise is made not to keep the promise and sufficient evidence of an intent to deceive.

The Crystals point to Czap's deposition statements that it was not Travelers' specific intent to keep the project lien free or responsibility to deal with liens as "all the evidence needed to demonstrate that Travelers did not intend to keep the projects lien free."  The Court disagrees. These statements are simply an attempt by Czap to explain Travelers' obligations under the bond; the statements do not shed any light on Czap's intent when she made the alleged promise that Travelers' job was to keep the projects lien free.

The Crystals also rely on the following purported "facts" to show the requisite promissory fraud intent: 1) Czap's intentional misrepresentation of the procedure for payment of bond claims and 2) Travelers' salvage strategy to pay claims on other CBI projects instead of the Crystal projects.   The problem with relying on these alleged "facts" is that these are not facts but rather, are unsupported inferences, i.e. additional allegations.  As to Czap's intentional misrepresentation, the Crystals infer the intentional misrepresentation because Czap did not

initially reveal that Travelers had an official bond claim form which made the process quicker.

As to Traveler's underhanded salvage strategy, the Crystals point to an internal Travelers'

memorandum prepared February 25, 2006, wherein the solvency of Case and CBI are discussed.

After listing Case's various developments and the liabilities thereon, the writer stated:  "Under

the best case scenario John [Case] expects to realize $3mm from the closing on The Lighthouse,

$9mm from San Carlos, $1.5 from Point Clear.  All of the 258 units at Lighthouse are sold.

However, contrary to what we had been told previously, [there] are 20 units out of 142 left to sell

at San Carlos." (doc. 46-14, p. 4).  A reasonable finder of fact could not infer such a strategy

from an overall reading of the memorandum.

In sum, the court finds that there is insufficient evidence from which a reasonable jury

could find that the last two elements of a promissory fraud claim are met.  The court

acknowledges that "[i]ntent is an act or emotion of the mind seldom, if ever, capable of direct

proof," but in this instance there is simply insufficient evidence from which a reasonable fact-

finder could even infer that when making the alleged promise, Travelers intended to deceive the

Crystals.  National Sec. Ins. Co. v. Donaldson, 664 So.2d 871, 876-877 (Ala. 1995) (citation

omitted).  Accordingly, Travelers' motion for summary judgment as to Counts One and Nine is

GRANTED.

2)  Counts Two and Ten  - Misrepresentation

In the counterclaim the Crystals allege the following regarding its claim of

misrepresentation: 1) That Travelers misrepresented what information was needed from the

subcontractors to remove the liens; 2) That Travelers misrepresented that it was going to act in

good faith, affirmatively and in a timely manner to ensure the outstanding liens were resolved;

and 3) That Travelers misrepresented that it was acting in good faith and in the best interest of Crystal Tower.

When pleading a claim of misrepresentation the complainant "must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997).   As pointed out by Travelers in its motion for summary judgment filed on July 2, 2009, the misrepresentation claim fails to meet the pleading requirements of Fed.R.Civ.P. 9(b), as it fails to give any specifics regarding the alleged misrepresentations.

However, instead of amending its October 2008 counterclaim to correct the obvious deficiencies, the Crystals moved for additional time to respond to the summary judgment, which was granted.   In their September 10, 2009 response to the motion for summary judgment, the Crystals submitted an affidavit from Collier Merrill which specifies the precise statements made, who made the statements and to whom they were made.   However, these new allegations and claims come too late to defeat summary judgment on the original claims.   From the facts alleged by the Crystals, Collier Merrill was the Crystals' primary contact person in its dealings with Travelers.   Thus, the Crystals should have had access to the specifics of their misrepresentation claim before the October 2008 counterclaim was even filed.   Thus, the Crystals' explanation of needing to depose Czap before the specifics of the misrepresentation could be determined is unpersuasive.

Accordingly, the Court finds that Travelers' motion for summary judgment based on a

failure to plead a sustainable misrepresentation claim is due to be GRANTED.  Specifically, the

misrepresentations, as pled, are too vague and speculative to support a misrepresentation claim.

Moreover, because the Crystals have failed to show good cause to support their October 15,

2009 motion to amend (Doc. 56) to add the new allegations and claims regarding the alleged

misrepresentations, the same is DENIED.

       3) <u>Counts Three and Eleven - Fraudulent suppression</u>

      In the counterclaim, the Crystals allege that Travelers suppressed: 1) the fact that it was

working with CBI and Case to clear liens on their other projects and sell those condominium

units; 2) the fact that CBI and Case were in financial trouble and were diverting funds to the

other projects; and 3) the fact that CBI was improperly and fraudulently billing the Crystals on

the Crystal Tower project. The Crystals argue detrimental reliance in that if they had known the

true financial status of CBI and that Travelers had a greater interest in completing the other

projects, they would have declared a default and terminated the construction contracts.

      Under Alabama law, the elements of a fraudulent suppression claim are "generally stated

as (1) a duty to disclose the facts; (2) concealment or nondisclosure of material facts by the

defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his injury."

<u>Stockton v. CKPD Development Co., LLC,</u> 936 So.2d 1065, 1081 (Ala. Civ. App. 2005).  "A

duty to communicate can arise from a confidential relationship between the plaintiff and the

defendant, from the particular circumstances of the case, or from a request for information, but

mere silence in the absence of a duty to disclose is not fraudulent." <u>Jewell v. Seaboard Indus.,</u>

<u>Inc.,</u> 667 So.2d 653, 658 (Ala. 1995) (citations omitted).

      Travelers argues that the counterclaim does not allege that Merrill asked Czap a specific,

clear, and direct question, explaining with particularity the information desired, such that would give rise to a duty to disclose all of the information which the Crystals allege was suppressed. In other words, Travelers moves to dismiss the claim because the Crystals failed to specify the basis for the duty to disclose.

The suppression claim sets forth the specific information that was allegedly suppressed by Travelers and thus satisfies the pleading requirements of Rule 9(b).  Implicit in the allegation of fraudulent suppression is the duty to disclose.  Moreover, at the August 2009 deposition of Czap, it was made clear the direct questions upon which the Crystals were relying to establish a duty to disclose: i.e. "They asked you what was going on with Coastal Builders and its ability to complete their projects and pay subcontractors" and "you were asked by owners about the contractor's financial condition and their ability to pay sub-contractors and complete their project."[7]  (Doc. 46-8, pp. 17-18).  Thus, the claim is not due to be dismissed for failure to specifically allege the basis for the duty to disclose.

However whether these questions establish a legal duty to disclose the information that was allegedly suppressed is another issue; one that is to be decided by the court. State Farm Fire & Casualty Co. v. Owen, 729 So.2d 834, 840 (Ala.1998) ("The judge should decide whether, assuming as truth all of the plaintiff's factual assertions, they are sufficient to give rise to a legal duty.").  Assuming that these specific questions were asked and that Czap responded, Travelers assumed "a duty not to suppress or conceal those facts that materially qualify the facts already stated."  Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C., 932 So.2d 883, 894-895 (Ala.

---

[7] The Crystals have not alleged or argued any other viable basis for the duty to disclose other than their request for information.

2005).  However, Travelers did "not assume a duty to divulge all information that may be or may become relevant to [the Crystals]." Id.  The duty that Travelers assumed by responding to the Crystals' questions was "to disclose those facts that are material to the ones already stated so as to make them truthful." Id.

Again, assuming that the alleged questions were asked and a response was made, the questions did not reasonably call for the disclosure of the fact that Travelers was working with CBI and Case to clear liens on their other projects and sell those condominium units or disclosure of the fact that CBI was allegedly improperly and fraudulently billing the Crystals on the Crystal Tower project.

However Travelers' alleged response, that CBI had the financial strength to complete the project and that Travelers would properly administer the payments to subcontractors, imposed on Travelers the duty to disclose known facts that materially qualify that response.  It is a jury question as to whether the alleged fact that "CBI and Case were in financial trouble and were diverting funds to the other projects" was true, and if so, whether it is a material qualification to Czap's response.

Travelers also argues that the Crystals did not reasonably rely on Czap's statements.  Specifically, Travelers points out that the Crystals were on notice of facts (i.e. the requirement of the joint account and complaints from subcontractors) that should have prompted the Crystals to exercise ordinary diligence in investigating CBI's financial condition.  Travelers points out that the Crystals had the right under the construction contract to audit and copy CBI's books, but chose not to do so.  While these facts make a persuasive case, the Courts finds that these facts do not preclude a reasonable jury from finding that the Crystals' reliance on the statement of CBI's

surety alone was reasonable.

In sum, the Court finds that there is a genuine issue of material fact as to whether Travelers failed to disclose material facts to the Crystals and whether the Crystals reasonably relied on statements made by Travelers.  Accordingly, summary judgment as to the claim for fraudulent suppression is DENIED.

4) <u>Counts Four and Twelve - Breach of fiduciary duty</u>

In the counterclaim, the Crystals allege that Travelers had a fiduciary duty to act in good faith in handling the payment and performance bonds.  The Crystals allege that because of Travelers' actions, it has breached the fiduciary duty.

Travelers argues that the Crystals cite no authority and plead no set of facts to show special circumstances or a confidential relationship such that could give rise to a fiduciary duty. Travelers argues that the parties are "knowledgeable and capable of handling their affairs and are "sophisticated business entities, steeped in construction and bond work", and therefore, no confidential relationship or special circumstances exist which would create a fiduciary duty on the part of Travelers.  Travelers also points out that Counts Four and Twelve are due to be dismissed as conceded claims because the Crystals did not offer any argument in their response.

Crystal Tower did not address the merits of Travelers' motion for summary judgment as to the claim of breach of fiduciary duty.[8]  "In opposing a motion for summary judgment, a 'party may not rely on his pleadings to avoid judgment against him.'"  <u>Resolution Trust Corp. v.</u>

_____

[8]  The Court notes that the Crystals identify all the tort counts and argue that tort claims as a group are not precluded (doc. 45, p.13).  However, in section E of the response (doc. 45, p.25),  the Crystals only respond to the merits of Travelers' arguments as to promissory fraud, misrepresentation, suppression, civil conspiracy, and negligence.

Dunmar Corp., 43 F.3d 587, 592 (11th Cir.1995), cert. denied sub nom., Jones v. Resolution

Trust Corp., 516 U.S. 817 (1995) (citing Ryan v. Int'l Union of Operating Eng'rs., Local 675, 794

F.2d 641, 643 (11th Cir.1986)).  However, the "mere failure of the non-moving party to create a

factual dispute does not automatically authorize the entry of summary judgment for the moving

party." Dixie Stevedores, Inc. v Marinic Maritime, Ltd., 778 F. 2d 670, 673 (11th Cir. 1985).  In

United States v. One Piece of Property, 5800 S.W. 4th Ave., Miami, Florida, 363 F.3d 1099 (11th

Cir. 2004), the Eleventh Circuit held that "[t]he district court cannot base the entry of summary

judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of

the motion", Id. at 1101, and noted the provision in Fed.R.Civ.P. 56(e) that when "'the adverse

party does not respond, summary judgment, *if appropriate*, shall be entered against the adverse

party.'" Id. at 1101 (emphasis in original); see also Trustees of the Central Pension Fund of the

International Union of Operating Engineers and Participating Employers v. Wolf Crane Service,

Inc., 374 F. 3d 1035, 1040 (11th Cir. 2004) (vacating and remanding the district court's grant of

summary judgment, in part, "[b]ecause summary judgment cannot be granted as a sanction for

merely failing to file a response to a motion for summary judgment[.]")

The Eleventh Circuit further explained that

> [t]he district court need not sua sponte review all of the evidentiary
> materials on file at the time the motion is granted, but must ensure
> that the motion itself is supported by evidentiary materials. [] At
> the least, the district court must review all of the evidentiary
> materials submitted in support of the motion for summary
> judgment. The district court cannot grant a motion for summary
> judgment merely for lack of any response by the opposing party,
> since the district court must review the motion and the supporting
> papers to determine whether they establish the absence of a
> genuine issue of material fact. In addition, so that there can be an
> effective review of the case on appeal, the district court's order
> granting summary judgment must indicate that the merits of the

motion were addressed.

One Piece of Real Property, 363 F.3d at 1101 -1102 (citations, internal quotations and footnote

omitted).

In Swann v. Regions Bank , 2008 WL 4182699, 11 (Ala. Civ. App. Sept. 12, 2008), in

which the court found no fiduciary duty between a bank and its customer, the court defined a

confidential as,

> " '[ [a] relationship in which] one person occupies toward another such a position
> of adviser or counselor as reasonably to inspire confidence that he will act in good
> faith for the other's interests, or when one person has gained the confidence of
> another and purports to act or advise with the other's interest in mind; where trust
> and confidence are reposed by one person in another who, as a result, gains an
> influence or superiority over the other; and it appears when the circumstances
> make it certain the parties do not deal on equal terms, but, on the one side, there is
> an overmastering influence, or, on the other, weakness, dependence, or trust,
> justifiably reposed; in both an unfair advantage is possible. It arises in cases in
> which confidence is reposed and accepted, or influence acquired, and in all the
> variety of relations in which dominion may be exercised by one person over
> another.' "

Swann, at *11 (quoting Holdbrooks v. Central Bank of Alabama, N.A., 435 So.2d 1250, 1252

(Ala.1983)).

The courts have looked to whether there are special circumstances which warrant the

imposition of a fiduciary duty. Guinn v. American Integrity Ins. Co., 568 So.2d 760, 764 (Ala.

1990).  Also, ". . . the existence of a duty is a question of law for the trial court." Guinn, 568

So.2d at 764 (finding no fiduciary duty between insured and insurance company and its agents)

(citing Berkel & Co. Contractors v. Providence Hospital, 454 So.2d 496 (Ala.1984) and Hand v.

Butts, 289 Ala. 653, 270 So.2d 789 (1972)).

The Crystals have not provided the court with any evidence of a confidential relationship

between Travelers and the Crystals such that would create a fiduciary duty or special

circumstances which would merit the imposition of a fiduciary duty.  The evidence shows that the parties are sophisticated business entities who obligated themselves to the performance bond and payment bond in the normal course of their business transactions.  Accordingly, Travelers' motion for summary judgment as to Counts Four and Twelve is GRANTED.

     5) <u>Counts Five and Thirteen - Civil conspiracy</u>

In the counterclaim, the Crystals allege that Travelers, CBI and Case conspired to sell the condominium units in the other projects owned or under construction by CBI and Case before selling the condominium units in Crystal Tower and Crystal Shores West, and in furtherance of this conspiracy committed the alleged torts.  The Crystals also allege that Travelers conspired with CBI and Case and allowed CBI to submit inflated draw requests, add overhead costs to Crystals' projects which should have been charged to CBI and Case's other projects, misrepresented to contractors that the Crystals were not paying CBI, and diverted funds to the other projects.

Travelers argues that this claim cannot survive because there is no valid underlying tort claim. Travelers also argues that the Crystals have not presented any evidence that Travelers and CBI had an agreement to conspire against the Crystals.  The Crystals respond that there is at minimum a genuine issue of material fact with regard to most or all of the tort claims and therefore the conspiracy claims survives summary judgment.

"A civil conspiracy requires a combination of two or more individuals to accomplish an unlawful purpose or to accomplish a lawful end by unlawful means." <u>Thompson Properties 119 AA 370, Ltd. v. Birmingham Hide and Tallow Co., Inc.</u>, 897 So.2d 248, 267 (Ala. 2004) (citing <u>Barber v. Stephenson</u>, 260 Ala. 151, 69 So.2d 251 (1953)).  Also "[u]nder Alabama law, [t]he

gist of an action alleging civil conspiracy is not the conspiracy itself but, rather, the wrong committed." Abrams v. Ciba Specialty Chemicals Corp., 2009 WL 3261264, 15(S.D. Ala. October 1, 2009) (quoting Hooper v. Columbus Regional Healthcare System, Inc., 956 So.2d 1135, 1141 (Ala.2006) (citations omitted)) (internal quotations omitted).  However, a civil conspiracy requires an agreement or "a meeting of the minds between the conspirators." Bayles v. Marriott , 816 So.2d 38, 42-43 (Ala. Civ. App. 2001) (citing First Bank of Childersburg v. Florey, 676 So.2d 324 (Ala. Civ. App. 1996). Also, the "plaintiff must allege and prove that the claimed conspirators had actual knowledge of, and the intent to bring about, the object of the claimed conspiracy." Id., at 327.

The Crystals have not presented sufficient evidence to establish that there was a meeting of the minds or an agreement among the alleged conspirators to engage in the only remaining tort, suppression.  "Summary judgment cannot be avoided ... based on hunches unsupported with significant probative evidence." Campbell v. Civil Air Patrol,131 F.Supp.2d 1303, 1316 (M.D. Ala. 2001) (quoting Raney v. Vinson Guard Service, Inc., 120 F.3d 1192, 1198 (11th Cir. 1997)).  Accordingly, summary judgment is GRANTED in favor of Travelers as to Counts Five and Thirteen.

### 6) Counts Eight and Fourteen - Negligence

In the counterclaim, the Crystals allege that Travelers had a duty to "properly handle, manage, oversee, and investigate the payment and performance issues that arose" on the projects and that Travelers negligently performed those duties to the detriment of the Crystals. On motion for summary judgment, Travelers argues that the duties allegedly breached are duties arising out of the payment and performance bonds, and therefore, these negligence claims are simply breach

of contract claims improperly cast as tort claims.

The Crystals respond that the "negligence claims are based, in part, on Travelers' negligent administration of the joint account for construction draws, Travelers and PC2's negligent management of CBI to finish the job, and Travelers' failure to perform its duty to keep the projects lien free or to complete the project" (doc. 45).  The Crystals argue that although Travelers' representative Czap testified that Travelers had no contractual duty to keep the project lien free, Travelers created such a duty because Czap assured the Crystals that CBI could finish the job.  The Crystals argue that after that assurance, Travelers had a duty to act with due care and breached that duty by failing to monitor CBI's cash flow and failing to make sure that CBI timely paid the subcontractors and material suppliers.

The "mere failure to perform a contractual obligation is not a tort."  Barber v. Business Products Center, Inc., 677 So.2d 223, 228 (Ala. 1996).  The Crystals allegations in the counterclaim are simply a restatement of the perceived contractual obligations of Travelers under the performance and/or payment bonds.  With the exception of Travelers assuming the duty not to suppress material facts (as discussed *supra*), Travelers duties to the Crystals pertaining to performance and payment issues arise solely from the bonds.  Accordingly, Travelers' motion for summary judgment is due to be GRANTED.

7) Count Six - Breach of contract

In the counterclaim, Crystal Tower LLC (Crystal) alleges that on November 22, 2006, it made a claim under the performance bond for the Crystal Tower condominium project and that it has yet to receive a completed Project.  Thus, it is alleged that Travelers has breached its contractual obligations under the performance bond.

On motion for summary judgment, Travelers argues that it has not breached its obligations under the performance bond because Crystal did not comply with the conditions precedent of the performance bond.   Specifically Travelers argues that Crystal did not meet the conditions precedent in the bond because it did not declare CBI in default, did not terminate its contract with CBI, and did not agree to pay the balance of the contract to Travelers as required to obligate Travelers to perform under the bond.

Crystal responds that Travelers through its course of conduct, either waived the conditions precedent or is equitably estopped from asserting the defense.   Specifically, Crystal points to the fact that Travelers engaged a third-party contract administrator (PC2) to oversee the completion of the building and thereafter directed Crystal to solicit and submit quotes to independently finish the work; actions which Crystal argues show that Travelers had assumed its performance obligations under the bond.   Crystal also points to the fact that Travelers knew that CBI was incapable of performing under its contract and in fact held a letter of default acknowledgment from CBI.

The performance bond required as follows:

> 3. If there is no Owner Default the Surety's obligation under this Bond shall arise after:
>
>> 3.1 The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below  that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and

24

> 3.2 The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract.  Such Contractor Default shall not be declared earlier than twenty days after the Contractor and Surety have received notice as provided in Subparagraph 3.1; and
>
> 3.3 The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

(doc. 36, Exhibit F).

Paragraph four explains Travelers' duties after the conditions precedent in paragraph 3 are met.  Travelers, at its own expense, shall then either arrange for the contractor CBI to complete the contract after obtaining the owner's consent, complete the contract through its own agents or independent contractors (such as PC2), or obtain a contract with a new contractor selected by the owner Crystal following a bid process (Id.).  In the alternative, Travelers may waive its right to take any of these actions, "determine the amount for which it may be liable" to Crystal, and "tender payment therefor" to Crystal, or Travelers may "[d]eny liability in whole or in part and notify" Crystal "citing reasons therefore" (Id. at paragraph 4.4).

The Supreme Court of Alabama has expounded on an identical default provision as follows:

> However, in determining whether terms in a contract constitute a condition precedent, we do not look for "magic" words, but we look to the document as a whole for its intended meaning. The plain language of paragraph 3 is that in the event of a contractor default, the surety's obligation under the bond shall arise after the occurrence of the events listed in subparagraphs 3.1, 3.2, and 3.3. The owner first must give proper notice, call a meeting, discuss the problems, and attempt to resolve them (subparagraph 3.1); then, if the problems are not resolved, the owner must declare a contractor default, formally terminating the contractor's right to complete the contract, and must declare the default at least 20 days after giving notice (subparagraph 3.2); and finally the owner must agree to pay the

balance of the contract to the surety or to a new contractor who will complete the contract as originally agreed (subparagraph 3.3)....

A declaration of default and the termination of a contract are not to be undertaken lightly. The United States Court of Appeals for the Fifth Circuit has stated: "A declaration of default sufficient to invoke the surety's obligations under the bond must be made in clear, direct, and unequivocal language. The declaration must inform the surety that the principal has committed a material breach or series of material breaches of the subcontract, that the obligee regards the subcontract as terminated, and that the surety must immediately commence performing under the terms of its bond."

Bank of Brewton, Inc. v. International Fidelity Ins. Co., 827 So.2d 747, 753 (Ala. 2002), quoting

L & A Contracting Co. v. Southern Concrete Servs., Inc., 17 F.3d 106, 111 (5th Cir. 1994).

In Hightower & Co., Inc. v. United States Fidelity & Guaranty Co., 527 So.2d 698, 703

n.1 (Ala.1988), the court noted that "a surety in Alabama has the right to stand on its contract

and to exact compliance with its stipulations, which may not be extended by construction or

implication beyond the precise terms of the agreement.... The contract of a surety, however, is to

be construed according to the intent of the parties and the implied condition of good faith.".

However, a waiver of the conditions precedent is possible:

A waiver occurs when a party voluntarily surrenders or relinquishes a known right, benefit, or advantage. A party's intent to waive a right may be established by any acts of the party that would manifest a waiver of his rights. This intention to waive a right may be found where one's course of conduct indicates the same or is inconsistent with any other intention. Generally, the issue whether there has been a waiver is a question for the finder of fact.

Nunnelley v. GE Capital Information Technology Solutions - North America , 730 So.2d 238,

241 (Ala. Civ. App. 1999).  However, "to make out a case of implied waiver of a legal right,

there must be a clear, unequivocal, and decisive act of the party showing such a purpose."

Ocwen Loan Servicing, LLC v. Washington, 939 So.2d 6, 18 (Ala. 2006) (quoting Bell v.

Birmingham Broad. Co., 266 Ala. 266, 269, 96 So.2d 263, 265 (1957)).

On November 22, 2006, a letter[9] was received from Crystal which put Travelers on notice that Crystal was considering a contractor default.  The parties then held a § 3.1 meeting in accordance with the terms of the bond.[10]  Thereafter, Crystal, CBI and Travelers entered into a working relationship to pay subcontractors and obtain releases.  At some point Travelers hired PC2 to help complete the project and requested Crystal to obtain and submit independent bids for completion.

Travelers argues that its actions were taken to prevent the triggering of any duties under the performance bond and should not be construed as a waiver of the conditions precedent. Travelers further argues that should taking such actions to prevent a default result in an implied waiver of the conditions precedent in the performance bond, then no surety would ever assist a

---

[9] The letter sent on November 22, 2006, from Crystal to Travelers and CBI complied with paragraph 3.1 and stated as follows:

> Please accept this letter as notice under paragraph 3.1 of the referenced Performance Bond.  The Owner is considering declaring a Contractor Default under the contract with Crystal Tower, LLC, dated March 2, 2005, as amended on August 23, 2006.  Accordingly, the Owner is requesting a conference with CBI and St. Pauls [Travelers] within 15 days of receipt of this notice.

> The Contractor Default is based on CBI's failure to complete required work.  The uncompleted work includes, but is not limited to, items shown on the enclosed lists.  Because of the passage of time since these lists were compiled, we recognized that some of the items may have been completed.

(doc. 46-1, p. 33, Exhibit I).

[10] Travelers cites to Exhibit B, p. 157, Czap's deposition but that page was not included in the exhibit.  However, Collier Merrill stated in his affidavit that after the November 22, 2006 letter was sent, Travelers, CBI and Crystal "participated in a meeting at which Travelers and CBI led CT to believe that [Crystal] Tower would be completed at no additional cost to CT" (doc. 46-1, p. 8; see also, doc. 45, ¶ 29 referencing the meeting).

financially struggling contractor.

Although the issue of waiver is generally one for the finder of fact, the Court finds that the actions taken by Travelers could not reasonably be considered a "clear and unequivocal waiver" of the conditions precedent. Specifically, the actions taken by Travelers could not be reasonably construed as "inconsistent with any other intention" but waiver of the contractual requirement that Crystal comply with the remaining two provisions of paragraph three of the performance bond in order to trigger Travelers' obligations.

Crystal's declaration of contractor default must be "clear, direct, and unequivocal" and inform Travelers that CBI has breached the construction contract and that Crystal considers the contract as terminated. Only then would Travelers be obligated to perform (or be subject to suit for failing to perform) under the terms of the bond. The fact that some of the actions taken by Travelers may have been the same as it would have taken had the duty to perform arose is not sufficient evidence from which a reasonable jury could find that Travelers waived its contractual right to assert the conditions precedent. Additionally, Travelers is not equitably estopped from relying upon the conditions precedent because the facts do not support a finding that Travelers acted in a manner inconsistent with its rights.

Accordingly, Travelers' motion for summary judgment on the breach of contract claim on the basis that Crystal failed to meet the conditions precedent in the contract, is GRANTED.[11]

V. Conclusion

For the reasons set forth herein, the motion for summary judgment is **DENIED** as to

---

[11] This determination makes the bad faith claim moot. Thus, summary judgment is also GRANTED at to Count Seven.

Counts Three and Eleven alleging fraudulent suppression; and **GRANTED** as to Counts One and Nine alleging promissory fraud, Counts Two and Ten alleging misrepresentation, Counts Four and Twelve alleging breach of fiduciary duty, Counts Five and Thirteen alleging civil conspiracy, Count Six alleging breach of contract, Count Seven alleging bad faith, and Counts Eight and Fourteen alleging negligence.[12]

  **DONE** this the 17th day of December, 2009.


       **/s/ Kristi K. DuBose**
       **KRISTI K. DuBOSE**
       **UNITED STATES DISTRICT JUDGE**

---

[12] The court requests additional briefing on the following issue: Whether consequential damages for the tort of fraudulent suppression are available?   See <u>Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.</u>, 946 F.Supp. 1358, 1372 (N.D. Ill. 1996)("[A] consequential damages exclusion may apply to tort as well as contract damages, depending upon the context of the exclusion.")  Travelers' brief is to be filed no later than **January 8, 2009.**  The Crystals' response will be due **January 29, 2009.**